# FOR PUBLICATION
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

v.

DANIEL APODACA,
     *Defendant-Appellant.*

No. 09-50372

D.C. No.
2:08-cr-0793-
DDP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
October 5, 2010—Pasadena, California

Filed April 12, 2011

Before: Richard D. Cudahy,* Kim McLane Wardlaw and
William A. Fletcher, Circuit Judges.

Opinion by Judge Cudahy;
Concurrence by Judge W. Fletcher

---

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

## COUNSEL

Sean K. Kennedy, Federal Public Defender, and Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for the appellant.

Andre Birotte Jr., United States Attorney, Christine C. Ewell, Assistant United States Attorney, and Stephanie S. Christensen, Assistant United States Attorney, Los Angeles, California, for the appellee.

## OPINION

CUDAHY, Circuit Judge:

Daniel Apodaca pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2). The district court deviated downward from the United States Sentencing Guidelines' recommendation and sentenced Apodaca to two years imprisonment and lifetime supervised release. Apodaca appeals the supervised release portion of his sentence, arguing that its length was unreasonable and that one of the supervised release conditions violates his constitutional rights. We affirm.

## I.

### A.    Jurisdiction and Standard of Review

We review the length of a term of supervised release for reasonableness. *United States v. Daniels*, 541 F.3d 915, 921 (9th Cir. 2008). When reviewing a sentence for reasonableness, we "merely ask[ ] whether the trial court abused its discretion." *Rita v. United States*, 551 U.S. 338, 351 (2007). Similarly, this court reviews "a district court's determination of the appropriate supervised release conditions . . . for abuse of discretion." *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006). We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

### B.    Factual and Procedural Background

In January 2008, the Los Angeles Police Department conducted an undercover, online investigation of individuals sharing child pornography over the internet. During the course of this investigation, a detective discovered that a computer owned by Daniel Apodaca contained a sizeable library of child pornography. On March 6, 2008, officers executed a federal search warrant at Apodaca's apartment. These officers seized Apodaca's laptop, which contained the pornographic materials the police had discovered earlier, and several compact discs, which contained further pornographic images and videos of children.

On July 23, 2008, Apodaca was arrested and charged with one count of violating 18 U.S.C. § 2252A(a)(5)(B), (b)(2) in the U.S. District Court for the Central District of California. The court released him on a $10,000 appearance bond and ordered that he comply with certain conditions of release. Apodaca fully complied with the terms of his release on bond.

On December 12, 2008, Apodaca appeared before the district court and pleaded guilty. He acknowledged that he had

knowingly possessed child pornography, that he knew that the persons depicted in the pornography were minors and that some of the pornography depicted children engaged in sadistic or masochistic acts. At the plea hearing, the court ensured that Apodaca knew that the maximum penalty for his offense included a lifetime period of supervised release.

On July 10, 2009, the district court conducted Apodaca's sentencing hearing. The court began by making sure that it had received and reviewed all of the sentencing documents that the parties had filed. It went on to hear arguments from both parties concerning what punishment the court should impose on Apodaca. The court also heard Apodaca's allocution.

After acknowledging all of the information the parties had submitted, the court calculated an advisory offense level of 28 for Apodaca's conduct and a Criminal History Category of I. It went on to sentence Apodaca to 24 months imprisonment, a multiple-year downward deviation from the Guidelines-recommended sentence of 78 to 97 months. In deciding to depart downward, the court found that Apodaca's behavior fell on the low end of the spectrum of relevant criminal conduct and that he presented a low risk of recidivism.

The district court further ordered that, upon release from imprisonment, Apodaca would be placed on supervised release for the Guidelines-recommended term of life. While on supervised release, the court stated that Apodaca would have to comply with fifteen specific terms and conditions. Fourteen of these conditions were taken directly from the initial Presentence Report filed by Apodaca's Probation Officer, with minor modifications being incorporated to accommodate objections raised by Apodaca's counsel at the sentencing hearing. The fifteenth condition was first proposed in the United States' response to Apodaca's sentencing position and was adopted by the Probation Officer in her second addendum to her Presentence Report. This provision prohibited Apodaca

from "associat[ing] or hav[ing] verbal, written, telephonic, or electronic communication with any person under the age of 18," with limited exceptions. Finally, in response to Apodaca's concerns about the length of his term of supervised release, the sentencing judge indicated that he would not necessarily be opposed at a later time to shortening Apodaca's term of supervised release and included a statement in the sentencing order permitting Apodaca to request such relief later.

Apodaca appeals from the district court's sentencing order on two grounds. First, he claims that the imposition of life-time supervised release was unreasonable. Second, he claims that the fifteenth supervised release condition violates his constitutional rights. For the reasons articulated below, we reject both arguments.

## II.

We conduct a two-step analysis when reviewing the reasonableness of a sentence: "we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (*en banc*).

### A.   Procedural Error

When determining whether a district court committed a reversible procedural error during sentencing, we consider whether the court "(1) correctly calculate[d] the Sentencing Guidelines range; (2) treat[ed] the Guidelines as Advisory; (3) consider[ed] the 18 U.S.C. § 3553(a) factors; (4) [chose] a sentence that is not based on clearly erroneous facts; (5) adequately explain[ed] the sentence; and (6) [did] not presume that the Guidelines range is reasonable." *United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir. 2010) (footnote omitted) (citing *Carty*, 520 F.3d at 991-93). While *Blinkinsop* and *Carty* concerned allegations of procedural error with

regard to terms of imprisonment, we consider the same factors when considering challenges to terms of supervised release. *See Daniels*, 541 F.3d at 921.

[1] Apodaca's allegations of procedural error are limited to claims concerning the adequacy of the district court's explanation of why it was imposing a lifetime term of supervised release. The sentencing statutes require district courts to "state in open court the reasons [supporting] imposition of a particular sentence." 18 U.S.C. § 3553(c). Further, "when a party raises a specific, non-frivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence, then the judge should normally explain why he accepts or rejects the party's position." *Carty*, 520 F.3d at 992-93. Even though a "within-Guidelines sentence ordinarily needs little explanation," courts are required to provide some explanation for their decision when "a party has requested a specific departure." *Id.* at 992. Such explanations, however, only need to "set forth enough to satisfy the appellate court that [the trial court judge] considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). We have held that "no lengthy explanation is necessary if the record makes it clear that the sentencing judge considered the evidence and arguments." *Daniels*, 541 F.3d at 922 (internal quotation marks omitted).

[2] A review of the sentencing hearing transcript establishes that the district court provided an adequate explanation for the sentence it imposed on Apodaca. The court engaged in an extensive colloquy with the parties prior to sentencing, acknowledging what it felt were the strongest and weakest aspects of Apodaca's case. The sentencing judge also explicitly stated that he had considered all of the parties' and the probation officer's submissions—documents that contained the probation officer's recommendation of lifetime supervised release, Apodaca's objections and the United States' reply. Further, the district court properly determined that a lifetime

term of supervised release is recommended by the Guidelines for his crime and that, while it was not compelled to sentence Apodaca to this term, the facts of Apodaca's case warranted a sentence that included lifetime supervised release. *See* 18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2(b)(2) & cmt. n.1. *See also Daniels*, 541 F.3d at 923. Finally, when Apodaca objected to the length of the sentence's term of supervised release, the district court addressed his concern (albeit briefly) and modified the language of the sentencing order to permit Apodaca to seek relief from this aspect of his sentence at a later date. It is clear that the trial court adequately justified its sentencing decisions.

## B.    Substantive Reasonableness

[3] Having determined that the district court did not commit a procedural error when sentencing Apodaca, we turn to considering the sentence's substantive reasonableness. *Blinkinsop*, 606 F.3d at 1116. When reviewing the substantive reasonableness of a sentence, we look at the reasonableness of the sentence "in light of all the 18 U.S.C. § 3553(a) factors, including the applicable Guideline range," *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006), as well as "the degree of variance for a sentence imposed outside the Guidelines range." *United States v. Autery*, 555 F.3d 864, 870 (9th Cir. 2009) (citing *Carty*, 520 F.3d at 993). Trial courts are supposed to impose sentences that are "sufficient but not greater than necessary," 18 U.S.C. § 3553(a), and appellate courts are only to reverse sentences when they find that the trial court has abused its discretion. *United States v. Barsumyan*, 517 F.3d 1154, 1157-58 (9th Cir. 2008). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 552 U.S. 38, 51 (2007). We have previously held that sentencing individuals convicted of possessing child pornography to lifetime terms of supervised release is not substantively unreasonable.

*United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008); *Daniels*, 541 F.3d at 922.

Apodaca claims that the district court's decision to sentence him to a lifetime term of supervised release was unreasonable on two grounds. First, he contends that the district court did not consider all of the mitigating facts present in his case and that the court's sentence contradicted its own findings concerning Apodaca's character and likelihood of committing future crimes. Second, he argues that the court failed to recognize important differences between individuals who have been convicted of possession-only child pornography crimes and violent sexual predators, leading it to enter an unduly severe sentence.

**[4]** Although a district court's failure to properly consider the § 3553(a)-relevant facts of a defendant's case may support a finding of substantive unreasonableness, Apodaca's contention is not supported by the record. *See United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009). Despite Apodaca's assertions to the contrary, there is every indication that the district court considered the specific facts presented by his case and that its sentence was consistent with its assessment of these facts. The transcript of the sentencing hearing shows that the court spent a good amount of time discussing the defendant's particular circumstances. The court stated what it felt were the positive aspects of defendant's character and referenced various facts that had been set forth in Apodaca's character evidence. These findings led it to sentence Apodaca to a term of imprisonment that was several years below that recommended by the Guidelines. The fact that the district court did not also depart from the Guidelines' recommended term of supervised release does not establish that the court's sentence was inconsistent with its own factual findings. Rather, it simply indicates that the court found that Apodaca's case merited a reduced jail sentence, but not a reduction in the term of supervised release.

**[5]** Apodaca's stronger argument is that imposition of lifetime supervised release constitutes a disproportionately severe punishment for his crime. In this connection, several of our sister circuits have criticized the Guidelines-recommended sentence for possession-only offenders like Apodaca as being unduly severe. *See, e.g., United States v. Grober*, 624 F.3d 592, 603-10 (3d Cir. 2010) (affirming a below-Guidelines sentence and identifying problems with the relevant Guidelines provisions); *United States v. Dorvee*, 616 F.3d 174, 182-89 (2d Cir. 2010) (reversing a within-Guideline sentence for a possession-only defendant because the length of the term of imprisonment made it "manifestly unjust"). Similarly, an increasing number of district courts have refused to follow the Guidelines and have departed downward when sentencing possession-only defendants. *See United States v. Diaz*, 720 F. Supp. 2d 1039, 1041-42 (E.D. Wis. 2010) (sentencing defendant to six months of imprisonment and twelve years of supervised release and collecting similar cases).

These decisions have identified several problems with the Guidelines' treatment of individuals such as Apodaca. First, a review of the history behind the sentencing provisions for child pornography establishes that they were not developed pursuant to the Sentencing Commission's normal processes and were not based on empirical data and expertise. *Grober*, 624 F.3d at 611; *Dorvee*, 616 F.3d at 184-85. Second, the Guidelines provide a large number of sentence enhancements, which apply in nearly every case and cause routine offenses to generate sentence recommendations approaching (or exceeding) statutory maximums. *Grober*, 624 F.3d at 611; *Dorvee*, 616 F.3d at 186. Concentrating offenders at the top of the sentencing spectrum in this manner has been described as "fundamentally incompatible with § 3553(a)." *Dorvee*, 616 F.3d at 187. Finally, earlier this year, the Sentencing Commission conducted a survey of the district courts that revealed widespread dissatisfaction with the extreme length of the Guideline-recommended sentences for possession-only defendants. United States Sentencing Commission, *Results of Sur-*

*vey of United States District Judges January 2010 through March 2010* (2010), *available at* http://www.ussc.gov/ Judge_Survey/2010/JudgeSurvey_201006.pdf.

**[6]** It is certainly true that most of the decisions criticizing this area of the Guidelines have focused on the severity of its imprisonment recommendations. But there are plausible reasons to question whether the supervised release provisions are similarly skewed. Under U.S.S.G. § 5D1.2(b) and 18 U.S.C. § 3583(k), a lifetime term of supervised release is recommended for all individuals convicted of sex offenses, regardless of whether the offense in question is a violent rape or child molestation versus mere possession of child pornography. Not only is the failure to distinguish between contact and possession-only offenders questionable on its face, but it may go against the grain of a growing body of empirical literature indicating that there are significant, § 3553(a)-relevant differences between these two groups. *See generally* Jesse B. Basbaum, Note, *Inequitable Sentencing for Possession of Child Pornography: A Failure To Distinguish Voyeurs from Pederasts*, 61 HASTINGS L.J. 1281, 1294-97 (2010) (collecting recent studies). These studies have frequently, but not unanimously, found that possession-only offenders are less likely to recidivate or commit more serious contact offenses than other sex offenders. *See, e.g.*, Andreas Frei et al., *Paedophilia on the Internet — A Study of 33 Convicted Offenders in the Canton of Lucerne*, 135 SWISS MED. WKLY 488 (2005); Michael C. Seto & Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders*, 17 SEXUAL ABUSE: J. RES. & TREATMENT 201 (2005). *But see* Michael L. Bourke & Andres E. Hernandez, *The 'Butner Study' Redux: A Report on the Incidence of Hands-On Child Victimization by Child Pornography Offenders*, 24 J. FAM. VIOLENCE 183 (2009).[1]

---

[1]While the United States has relied upon the Bourke and Hernandez study to support its claims concerning the dangers posed by possession-

**[7]** If we were presented with scientific evidence that conclusively (or near-conclusively) established that possession-only Internet child pornographers were highly unlikely to recidivate or commit more serious sex offenses, then we might have grounds to find that sentencing an individual like Apodaca to a lifetime term of supervised release is substantively unreasonable. Sentencing individuals who pose little risk to society to a lifetime term of supervised release might well violate 18 U.S.C. § 3553(a)'s prohibition on imposing sentences that are "greater than necessary." Unfortunately for Apodaca, the scientific literature before this court falls short of this standard. While there is substantial evidence indicating that the current Guidelines-recommended sentence for possession-only offenders may be difficult to support, the decision as to whether the Guidelines should be revised must, at this point, be made by the legislature and Sentencing Commission. In the present case, the sentencing judge rested his case regarding the term of supervised release with the comment that he felt the lifetime term was "a way of saying let's be really safe and careful." Given the current state of research in this area, we cannot hold that this conclusion is unreasonable.

**[8]** Because we have rejected both of Apodaca's substantive unreasonableness arguments, we conclude that the district court did not abuse its discretion when sentencing Apodaca to lifetime supervised release. This finding places today's holding in line with our decisions in similar cases. *See Cope*, 527 F.3d at 951-52; *Daniels*, 541 F.3d at 922.

---

only child pornographers, it must be noted that one of the study's authors has criticized the government's characterization of his work, stating that "the argument that the majority of [child pornography] offenders are indeed contact sexual offenders and, therefore, dangerous predators . . . simply is not supported by the scientific evidence." Andres E. Hernandez, *Psychological and Behavior Characteristics of Child Pornography Offenders in Treatment* 4 (Apr. 2009) (unpublished manuscript), *available at* http://www.iprc.unc.edu/G8/Hernandez_position_paper_Global_Symposium.pdf.

### III.

Apodaca argues that the fifteenth condition of his supervised release violates his constitutional rights. The provision in question provides:

> The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18, except: a) in the presence of the parent or legal guardian of said minor; and b) on the condition that the defendant notify said parent or legal guardian of his/her conviction in the instant offense/prior offense. This provision does not encompass persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom the defendant must deal with in order to obtain ordinary and usual commercial services.

Apodaca contends that this condition would preclude him from having contact with a child of his own, thereby restricting his right to procreate and raise a family, a fundamental interest guaranteed him under the Constitution.

**[9]** This provision of the sentencing order does not violate Apodaca's constitutional rights. The plain language of the condition distinctly allows Apodaca to have contact with children in the presence of their duly notified parent or legal guardian. Were Apodaca to have children, he would be able to associate with his own children because he would be their parent and, as such, would automatically fall within the provision's exception. Hence, this condition does not burden his right to procreate or raise children. *See United States v. Stoterau*, 524 F.3d 988, 1008 (9th Cir. 2008) (upholding a nearly identical condition).

### IV.

For the reasons set forth above, the district court's sentence is AFFIRMED.

W. FLETCHER, J., concurring:

Because the district court committed no procedural error and sentenced Apodaca to the lifetime term of supervised release recommended by the Guidelines, our precedents require us to affirm Apodaca's sentence. *See, e.g.*, *United States v. Carty*, 520 F.3d 984, 993-94 (9th Cir. 2008) (en banc). I therefore concur in the judgment and almost all of the opinion.

I write separately to state my view that the applicable statute, 18 U.S.C. § 3583(k), and Guidelines policy statement, U.S.S.G. § 5D1.2(b)(2), grossly overestimate the risk that defendants like Apodaca, who are convicted only of possessing child pornography downloaded from the Internet, and who have no prior contact child sex abuse convictions, will commit contact sex offenses against children. *Compare, e.g.*, *United States v. Williams*, No. 10-30084, 2011 WL 768082, at *1 (9th Cir. March 7, 2011) (prior child sexual assault convictions). The routine imposition of lifetime terms of supervised release on Internet-only child pornography offenders departs from Congress's purpose in enacting § 3583(k) and ignores the best available empirical evidence. This practice results in onerous sentences imposed without individualized attention to the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), or to the "need for the sentence imposed to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C).

A lifetime term of supervised release is extremely rare. Less than one percent of the federal defendants sentenced between fiscal years 2005-09 received such a term. U.S. SENT'G COMM'N, FEDERAL OFFENDERS SENTENCED TO SUPERVISED RELEASE 58-60 & nn.252-55 (2010), *available at* http://www.ussc.gov/Research/Research_Publications/Supervised_Release/20100722_Supervised_Release.pdf. Congress has provided for lifetime supervision for defendants convicted of drug trafficking offenses, *see* 21

U.S.C. §§ 841(b), 960(b); terrorism offenses, *see* 18 U.S.C. §§ 2332b(g)(5)(B), 3583(j); and various sex offenses, *see id.* § 3583(k). For all other crimes, the maximum term of supervision is five years. *Id.* § 3583(b). The "overwhelming majority" — more than 95 percent — of those who received lifetime supervision were convicted of sex offenses. U.S. SENT'G COMM'N, *supra*, at 58-59.

When Congress enacted § 3583(k), it had in mind sex offenders who had committed contact offenses against children and were perceived to pose high risks of recidivism. *See* PROTECT Act of 2003, Pub. L. No. 108-21, § 101(3), 117 Stat. 650, 651-52; H.R. CONF. REP. NO. 108-66, at 49-50 (2003) (defending lifetime supervised release as necessary to monitor "the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison"), *reprinted in* 2003 U.S.C.C.A.N. 683, 684. *See also, e.g.*, 149 Cong. Rec. S5113-01, 5132 (Apr. 10, 2003) (statement of Sen. Sessions) ("[S]exual offenders and predators are repeat offenders. A 1998 study of sexual recidivism factors for child molesters showed that 43 percent of offenders sexually reoffended within a 4-year follow-up period. Almost half of the people arrested as child molesters reoffended in a sexual abuse case within 4 years. . . . We put in a provision that would allow lifetime supervision . . . . The theory behind it is simply this: science and history tell us that child molesters are repeat offenders.").

The legislative history of a bill passed by the House in the previous Congress, which was the genesis of § 3583(k), confirms this understanding. *See* Lifetime Consequences for Sex Offenders Act of 2002, H.R. 4679, 107th Cong. (2002); H.R. CONF. REP. 108-66, at 50. The House Report on H.R. 4679 focused on the risk of recidivism posed by violent sexual offenders and persons convicted of sexual assault. *See* H.R. REP. NO. 107-527, at 2 (2002). Likewise, debate on the 2002 bill before the House Judiciary Committee indicates that Rep-

resentatives were primarily concerned with the threat of recidivism by contact sex offenders against children. *See, e.g.*, *Lifetime Consequences for Sex Offenders Act of 2002: Markup Transcript on H.R. 4679 Before the H. Comm. on the Judiciary*, 107th Cong. 12 (2002) (statement of Rep. Green)("This is giving judges the tools to prevent sex crimes against kids, because we know that sex crimes against kids — those monsters who perpetrate sex crimes against kids have among the highest recidivism rates of any type of offender."), *available at* http://judiciary.house.gov/legacy/107-527.pdf.; *id.* at 23 (statement of Rep. Lofgren) ("[E]specially in the case of child molesting, where the recidivism rate is almost 100 percent, I think just releasing a child molester is a very dangerous thing to do.").

Current empirical literature casts serious doubt on the existence of a substantial relationship between the consumption of child pornography and the likelihood of a contact sexual offense against a child. For example, one recent study that followed 231 child pornography offenders for six years after their initial offenses found that only nine persons, or 3.9 percent of the sample, committed even a non-contact sexual offense; only two persons, or 0.8 percent of the sample, committed a contact offense. Jérôme Endrass et al., *The Consumption of Internet Child Pornography and Violent Sex Offending*, 9 BMC PSYCHIATRY 43 (2009), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2716325/pdf/1471-244X-9-43.pdf.Endrass et al. concluded that "the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses . . . at least not in those subjects without prior convictions for hands-on sex offenses." *Id. See also* Michael C. Seto & Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders*, 17 SEXUAL ABUSE 201, 208 (2005) ("[O]ur finding does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children.").

Other studies reinforce the conclusion that individuals who have only possessed and/or viewed child pornography present substantially lower risks of harm than do individuals who have committed contact sex offenses. *See, e.g.*, L. Webb, J. Craissati & S. Keen, *Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters*, 19 SEXUAL ABUSE 449, 463 (2007) (finding Internet-only offenders "significantly less likely to fail in the community than child molesters," and concluding that "by far the largest subgroup of internet offenders would appear to pose a very low risk of sexual recidivism"), *available at* http://sax.sagepub.com/content/19/4/449.full.pdf+html; Seto & Eke, *supra*, at 207 & tbl.3 (finding that only 1.3 percent of Internet-only offenders in the sample recidivated with contact sex offenses, in contrast to 9.2 percent of persons with prior Internet and contact sex offenses).

The government points to a single study that it argues demonstrates a causal link between viewing child pornography and sexually assaulting children. Michael L. Bourke & Andres E. Hernandez, *The 'Butner Study' Redux: A Report on the Incidence of Hands-On Child Victimization by Child Pornography Offenders*, 24 J. FAMILY VIOLENCE 183 (2009). But one of the study's authors has disavowed the government's citation of his work to support this claim, and has cautioned that "the argument that the majority of [child pornography] offenders are indeed contact sexual offenders and, therefore, dangerous predators . . . simply is not supported by the scientific evidence." Andres E. Hernandez, *Psychological and Behavioral Characteristics of Child Pornography Offenders in Treatment*, at 4 (Apr. 2009) (unpublished manuscript) (emphasis deleted), *available at* http://www.iprc.unc.edu/G8/ Hernandez_position_paper_Global_Symposium.pdf. The author has explained that, because the study subjects were volunteer participants in a prison sex offender treatment program, the observed correlation between Internet child pornography consumption and contact sex offenses cannot be generalized. *Id.* at 9. Moreover, the underlying Butner study

reported that "[t]he vast majority of our subjects indicated they committed acts of hands-on abuse *prior* to seeking child pornography via the Internet." *Id.* (emphasis in original). *See also* Melissa Hamilton, *The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?*, 22 STAN. L. & POL'Y REV. (manuscript at 42-48) (forthcoming 2011) (pointing out further problems with the Butner study, including sample bias and the possibility that study subjects over-reported their history of sexual offenses in order to curry favor with clinicians and avoid expulsion from the treatment program), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1689507.

A growing body of literature suggests that the Internet — by rendering child pornography more accessible, affordable, and anonymously obtainable than in the past — has "facilitate[d] . . a new kind of crime." Andreas Frei et al., *Paedophilia on the Internet — A Study of 33 Convicted Offenders in the Canton of Lucerne*, 135 SWISS MED. WEEKLY 488, 492 (2005), *available at* http://www.smw.ch/docs/pdf200x/2005/33/smw-11095.pdf. *See also* Endrass et al., *supra*, at 44; Webb, Craissati, & Keen, *supra*, at 450. There is no evidence that Congress or the Commission considered empirical evidence relevant to Internet-only offenders when they aggregated such offenders with contact sexual offenders under § 3583(k) and U.S.S.G. § 5D1.2(b)(2). Rather, Congress was contemplating quite different criminals: "people who are convicted of pedophilia" for whom "the recidivism rate . . . is close to 100 percent." *Markup Transcript on H.R. 4679*, *supra*, at 18 (statement of Rep. Sensenbrenner). That estimate of the risk of subsequent contact sex offenses may be high even with respect to contact sex offenders; with respect to Internet-only offenders like Apodaca, it is simply wrong.

Congress has directed that, in setting a term of supervised release, a sentencing court must select a term "sufficient, but not greater than necessary, to," *inter alia*, "protect the public from further crimes of the defendant." 18 U.S.C.

§ 3553(a)(2)(C); *id.* § 3583(c). It is inconsistent with this directive to treat all defendants convicted of one of the disparate group of sex offenses enumerated in § 3583(k) as equally dangerous and therefore equally deserving of lifetime supervision. It is also inconsistent with the need to avoid unwarranted similarities among sentences for defendants convicted of dissimilar conduct. *See Gall v. United States*, 552 U.S. 38, 55 (2007). Sentencing Guideline § 5D1.2(b)(2) recommends lifetime supervised release for any defendant convicted of a "sex offense" — whether the offense is the violent rape of a child by a defendant with several sex abuse priors or the downloading of child pornography over the Internet by a first-time offender. It is difficult to reconcile this Guideline with the requirement of § 3553(a)(1) that a sentencing court focus on the particular characteristics of the offense and the offender. *See United States v. Dorvee*, 616 F.3d 174, 187 (2d Cir. 2010); *Carty*, 520 F.3d at 991.

The policy statement at U.S.S.G. § 5D1.2(b)(2) does not "exemplify the [Sentencing] Commission's exercise of its characteristic institutional role." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). The Sentencing Commission added the policy statement when the statutory maximum term of supervised release was five years, not life. *Compare* U.S.S.G. app. C, amend. 615 (2001) *with* 18 U.S.C. § 3583(b) (2000). The Commission defined the term "sex offense" not by attempting to classify various types of sex offenders with respect to their relative risks of recidivism or their needs for ongoing supervision and treatment, but by adopting Congress's definition of that term. *Compare* U.S.S.G. app. C., amend. 701 (2007) (codified at U.S.S.G. § 5D1.2 cmt. n.1) *with* PROTECT Act of 2003, Pub. L. No. 108-21, § 101(3), 117 Stat. 651, 652 (codified at 18 U.S.C. § 3583(k)) *and* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 141(e)(2), 120 Stat. 587, 603 (codified at 18 U.S.C. § 3583(k)). As was true of the crack Guidelines at issue in *Kimbrough*, Congress, in enacting § 3583(k), relied on "assumptions about the . . . prevalence of certain harmful

conduct associated with" the consumption of child pornography "that more recent research and data no longer support." 552 U.S. at 97 (internal quotation marks omitted).

The Commission has declared that a re-assessment of the risk of recidivism posed by child pornography offenders is a priority in the coming year. *See* Notice of Final Priorities, 75 Fed. Reg. 54,699, 54,699-700 (Sept. 8, 2010). *Cf. Kimbrough*, 552 U.S. at 99-100 (discussing Commission's proposed amendments to the 100:1 crack/powder sentencing ratio). As the law now stands, Congress has permitted and the Sentencing Commission has recommended a lifetime term of supervised release for every child pornography offender. The evidence demonstrates that in many cases, such a sentence is not justifiable on the grounds that the defendant poses an elevated risk of committing contact sex offenses. I hope that Congress or the Commission will address the undifferentiated treatment of the dissimilar groups of sex offenders covered by § 3583(k) and U.S.S.G. § 5D1.2(b)(2) to ensure that terms of supervised release are "no greater than necessary" to achieve the purposes of sentencing, *see* 18 U.S.C. § 3553(a), while keeping in mind that supervised release "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000).