CUDAHY, Circuit Judge,
concurring.
I join the majority opinion because I agree that the sentence is within the guidelines and therefore presumptively reasonable and, particularly in the case of this multifaceted crime, much is left to the discretion of the sentencing judge after consulting 18 U.S.C. § 3553. Admittedly, however, this leaves many questions unanswered and many possible questions unasked. These questions relate, among other things, to what are the primary evils sought to be reached by the prosecution of various strands of child pornography, what are the relationships, if any, between many different sorts of violations and what are the prospects for repeat offenses by those who have been severely punished for these offenses. It may be a matter of consequence that the district court itself at the time of sentencing announced that the crime in question was one it did not understand. I am sure it was not alone in this sentiment.
The most well-known and authoritatively established evil of child pornography production is the overt exploitation of children as performers in pornographic depictions. The role of performers as victims is illustrated by the distinction drawn by the Supreme Court between real human performers and virtual images. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 240, 249, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) (noting that children are “exploited by the production process” and that child pornography is “a permanent record of a child’s abuse”). The present case presents the producer not as a coercive manipulator of children but as a sort of “peeping Tom” catching children at intimate moments and exposing them for the world to see. What difference, if any, do these circumstances make?
This brings us to a second violation, uncharged but evident here — distribution of pornographic images. Here, one of the key evils to be reached by prosecution is the exposure of pictured children to widespread humiliation. The district court in its sentencing discussion emphasized this aspect of things by citing the profound effect on it of the “Vicki video” victim impact statement by the subject of that video who was deeply distressed by the broad circulation of identifiable images of her being raped by her father. However, the present video differs in that the victims’ identities have been excised. How does this weigh on the scales? Of course, a perhaps more obvious factor in the analysis is the one argued most strenuously by the defendant: namely that the images portrayed on his videos of showering, disrobing and even masturbating are relatively mild stuff compared with forcible rape.
The other violation charged here involves possession of pornographic images in quantities apparently rarely equaled. As explicated in Ashcroft, the primary evil here is the creation of a market for the production of images involving the evils already briefly described. Since possession carries a maximum sentence of ten years, it does not figure as significantly in sentencing controversy. But it, as well as other child pornography offenses, leads to the issue that has involved almost unlimit *803 ed speculation but few conclusions: does violation of the child pornography statutes predict actual physical child abuse, which most analysts regard as the most dangerous evil of this complex. In the present case, there was no evidence that the defendant had committed physical child abuse and, although the district court raised the issue whether the pornography offenses pointed in that direction, left the question as undemonstrated or at least unproven. The district court thus followed in the wake of numerous opinions in many circuits that have speculated, called for more research or merely assumed what seemed likely conclusions. Several courts of appeals have begun to more aggressively review these cases for substantive reasonableness. See, e.g., United States v. Apodaca, 641 F.3d 1077 (9th Cir.2011); United States v. Dorvee, 616 F.3d 174 (2d Cir.2010); see also United States v. Grober, 624 F.3d 592, 603-10 (3d Cir.2010).
These are only some of the issues presented here, and generally in these child pornography cases about which the guidelines and other sources of authority provide little guidance and about which there is almost inevitable speculation but facts or solid conclusions are hard to come by. Under these circumstances uniformity cannot be achieved and justice is elusive. All the responsible contributors to the sentencing process need to focus on a better provision of reasonable standards as to the issues I have mentioned and many others presented by these multifarious crimes.