An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVEN LLAMAS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65589

**FILED**

JUN 1 8 2015

TRACIE K. LINDEMAN
**CLERK OF SUPREME COURT**
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This appeal challenges the conditions imposed pursuant to NRS 176A.410(1)(l) on appellant's probation following his conviction of sexually motivated coercion. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

Sarah C. called her brother, Joseph D., one morning and told him that her live-in boyfriend, appellant Steven Llamas, had come home "stumbling" drunk that morning and that she found him asleep next to her biological son from a different father, who was also asleep, with the boy's pants open and Llamas's mouth on the boy's penis. Later that day, at Joseph's urging, Sarah reported the incident to a Metro detective, though she now maintained that Llamas's penis was exposed, in his hand, and touching her son's face. Despite that Sarah claims she later retracted the accusations, the State charged Llamas with two counts of lewdness with a minor child and one count of sexual assault.[1]

At the preliminary hearing, both Joseph, with whom the victim now lives, and the Metro detective testified as to Sarah's

___

[1]The State also charged Llamas with one count of dissuading a witness, a charge not at issue in this appeal.

15-18719

statements outlined above. Following the hearing, Llamas pled guilty to a lesser charge of sexually motivated coercion, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), thereby denying his guilt but acknowledging that "the State would present sufficient evidence at trial that a jury would return a verdict of guilty of a greater offense or of more offenses." The district court adjudged Llamas guilty and suspended his sentence provided he complies with the conditions of his probation, one of which, mandated by NRS 176A.410(1)(l), requires that Llamas "[n]ot have contact with a person less than 18 years of age in a secluded environment unless another adult who has never been convicted of a sexual offense is present and permission has been obtained from the parole and probation officer assigned to the defendant in advance of each such contact."[2] Llamas has two biological daughters—one with Sarah. Because Llamas's probation condition hinders his ability to live with and privately visit these children he appeals its imposition as violative of his constitutional right to intimately associate and as an abuse of the district court's discretion.

I.

At issue in this appeal is the constitutionality and application of NRS 176A.410(1)(l). This statute states that, unless extraordinary circumstances are present, NRS 176A.410(6), "if a defendant is convicted of a sexual offense and the court grants probation or suspends the sentence, the court shall . . . order as a condition of probation or suspension of sentence that the defendant":

---

[2]Llamas suggests that the district court orally allowed an exception to this condition for his visitation of his minor children. But the written order does not so state and it is this order that controls. *See Rust v. Clark Cnty. Sch. Dist.*, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987).

(l) Not have contact with a person less than 18 years of age in a secluded environment unless another adult who has never been convicted of a sexual offense is present and permission has been obtained from the parole and probation officer assigned to the defendant in advance of each such contact.

Llamas argues that the probation condition NRS 176A.410(1)(l) requires cannot be constitutionally imposed upon him.

We assume, as Llamas does, that the right to intimately associate with one's biological child is a fundamental right protected by the Fourteenth Amendment. *But see Piscottano v. Murphy*, 511 F.3d 247, 278 (2d Cir. 2007) ("The source of the intimate association right has not been authoritatively determined.") (internal quotations omitted). Crediting this assumption, we would ordinarily subject this statute's alleged infringement of this right to strict scrutiny, thereby requiring that it be narrowly tailored to serve a compelling state interest. *See In re Parental Rights as to J.L.N.*, 118 Nev. 621, 625, 55 P.3d 955, 958 (2002) (stating that parents have a "fundamental right to care for and control their children" in the context of a petition to terminate parental rights and that a statute's infringement upon such a right is subject to strict scrutiny). But it is not clear whether strict scrutiny should apply where, as here, the fundamental right infringed upon belongs to a probationer and is so restricted as a condition of his or her probation. *See United States v. Schave*, 186 F.3d 839, 843 (7th Cir. 1999) (holding that a "court will not strike down conditions of release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism"); *see also Himmage v. State*, 88 Nev. 296, 299, 496 P.2d 763, 766 (1972) (a probationer who has been granted the privilege of probation on condition

that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection).

Llamas offers no elucidation on the point, failing to even note strict scrutiny's general application where a statute infringes upon a fundamental right, much less to advocate as to its pertinence here. Instead he tenders as general law, based upon his reading of certain Ninth Circuit precedent—namely, *United States v. Wolf Child*, 699 F.3d 1082, 1090-91 (9th Cir. 2012), and *United States v. Apodaca*, 641 F.3d 1077, 1085 (9th Cir. 2011)—the proposition that "a condition of probation may not burden an individual's constitutional right to . . . raise [his] children." But neither *Wolf Child* nor *Apodaca* stand for this principle. *See Wolf Child*, 699 F.3d at 1092 (noting that just because a probation condition infringes upon a fundamental right "does not mean that [condition] is necessarily invalid"); *Apodaca*, 641 F.3d at 1085 (favorably citing *United States v. Stoterau*, 524 F.3d 988, 1005 (9th Cir. 2008), which held that a court imposing a probation condition that infringed on a fundamental right must "support its decision (to impose the condition) on the record with record evidence that the condition . . . is necessary to accomplish one or more of the factors listed in [the federal supervised release guidelines] and involves no greater deprivation of liberty than is reasonably necessary") (internal quotation omitted). And in any case, this precedent appears to be based upon federal *statutory* law, *see* 18 U.S.C. § 3583(d); *Wolf Child*, 699 F.3d at 1090; *Apodaca*, 641 F.3d at 1085 (citing *Stoterau*, 524 U.S. at 1008, which analyzed § 3583(d)), and therefore, does not "set the minimum national [constitutional] standard for the exercise of individual rights" in this context.

If we meet Llamas in the middle and apply strict scrutiny—the standard that would be most protective of his rights short of the bar on governmental infringement he requests—there remains the question of that test's proper interpretation; specifically, what it means to require that a statute be narrowly tailored in this context. *Compare United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013) (equating narrow tailoring with reasonable necessity) *with Gaines v. State*, 116 Nev. 359, 371, 998 P.2d 166, 173 (2000) (seeming to equate narrow tailoring with strict necessity). This facet of constitutional theory is unaddressed by Llamas, a deficiency that would, if the distinction determined the outcome, justify us in summarily rejecting the claim. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (declining to rule on issues an appellant "neglected . . . to cogently argue, and present relevant authority, in support" thereof). But, this "as applied" challenge makes up the core of Llamas's appeal,[3] and a determination of the constitutional nuances he ignores is not required because, assuming that strict scrutiny applies *and* that its narrow tailoring requires strict necessity (assumptions that work in Llamas's favor), his as-applied challenge still fails.

Imposing NRS 176A.410(1)(l) on Llamas served a compelling state interest. As the district court noted, the purpose in imposing the condition was to give "Parole and Probation . . . all of the leeway that they need to ensure that the defendant has no contact with . . . the other

---

[3]It does not appear that Llamas advances a facial challenge to the statute, rather than "as applied." Assuming he does, we reject the challenge based on *Edwards*, inasmuch as he does not cogently argue or support the claim.

victims, children that were involved in this actual incident." It is well-established that the government has a "compelling interest in protecting the physical and psychological well-being of minors." *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989); *see also Herring v. State*, 100 So. 3d 616, 625 (Ala. Crim. App. 2011); *State v. Evenson*, 33 P.3d 780, 784 (Ariz. Ct. App. 2001); *Jones v. State*, 640 So. 2d 1084, 1086 (Fla. 1994) (compelling interest in protecting children from threat of sexual exploitation); *Sparks v. Sparks*, 65 A.3d 1223, 1232 (Me. 2013) (compelling interest in protecting children from harm or threat of harm); *In re Dependency of T.C.C.B.*, 158 P.3d 1251, 1254 (Wash. Ct. App. 2007); *In re Zachary B.*, 678 N.W.2d 831, 836 (Wis. 2004) (compelling interest in protecting children from unfit parents).

As to whether NRS 176A.410(1)(l), as applied to Llamas, is narrowly tailored to serve that interest, and again, assuming that narrow tailoring requires strict necessity, it seems that the section satisfies the test—Llamas pled guilty (without admitting his guilt, an apparently common phenomenon in the realm of sex offenses, *see State v. Smullen*, 571 A.2d 1305, 1306 (N.J. 1990) (indicating that defendants charged with sex offenses are hesitant to elaborate on factual basis of plea); Jeffrey A. Klotz et. al., *Cognitive Restructuring Through Law: A Therapeutic Jurisprudence Approach to Sex Offenders and the Plea Process*, 15 U. Puget Sound L. Rev. 579, 591 n.53 (1992) (discussing "anecdotal evidence that sex offenders are hesitant to admit guilt at guilty plea hearings")) to sexually exploiting the half-brother of one of the girls with whom he now presses his constitutional right to associate, when the boy was only 12 years old and living under the same roof. The parole condition imposed by NRS 176A.410(1)(l) does not prohibit him entirely from visiting either of

his daughters. To the contrary, the district court expressly disavowed its intention to impose such a prohibition, saying "I'm not going to cut [Llamas] off and I'm not going to direct them to not have access to his biological children, but there [are] going to be some restrictions." Instead, the condition only requires that his parole and probation officer approve said visitations. This serves, first, to ensure that Llamas will not have any contact with the victim; a necessary safeguard, despite that the boy no longer lives with his mother, because both Llamas and Sarah, with whom Llamas lives, now deny the sexual abuse and therefore cannot be trusted to protect the boy from contact with Llamas on their own accord. Second, though Llamas states that he "is not a danger to his own children"—thus suggesting that his biological children should have been excluded from the probation condition's requirements—whether this is the case is not entirely clear inasmuch as he pled guilty, without admitting guilt, to a sexual offense against a young child with whom he lived and to whom he appears to have been a quasi-parental figure. *See* Brandi L. Joffrion, *Sacrificing Fundamental Principles of Justice for Efficiency: The Case Against* Alford *Pleas*, 2 U. Denv. Crim. L. Rev. 39, 53 (2012) (discussing a study that "found that seven out of eight sex offenders who entered Alford pleas reoffended within five years of his or her release, a rate two to five times higher than the general recidivism rate of sex offender") (internal citations omitted); Patrick A. Langan, Erica L. Schmitt, Matthew R. Durose, Dep.t of Justice, NCJ 198281, *Recidivism of Sex Offenders Released From Prison in 1994*, 30, 36 (2003) (report by Department of Justice statisticians stating that the rate of men previously convicted of a sexual offense against a child who then commit a second offense against a child is high compared to the rate for non sex-offenders and that, "[a]mong

cases where the victim was under 18, the boy or girl was the [man]'s own child (16%), stepchild (16%), sibling or stepsibling (2%), or other relative (13%) in nearly half of all child victim cases (46%)").

To counter the apparent necessity of this condition, Llamas points, again, to *Wolf Child*, wherein the Ninth Circuit suggested that a parole condition denying Wolf Child access to his children was not necessary for their protection. *See Wolf Child*, 699 F.3d at 1094 (criticizing the federal district court's failure to "explain why the fact that Wolf Child might pose a risk to certain minors demonstrates that he poses a risk to his *own children*"). But Wolf Child, then 22-years-old, was accused of assaulting an inebriated 16-year-old girl at a party. *Id.* at 1088. And in this way, his case is importantly different from Llamas's— denying Wolf Child access to his children was not at all necessary to prevent the victim of his offense from having to encounter him again, and therefore did nothing to protect her. Further, the character of Wolf Child's offense and his plea, which was not made via *Alford,* may also have made his contact with his own children less risky for them. *See* Joffrion, 2 U. Denv. Crim. L. Rev. at 53; Langan, *supra* at 31 (noting that "sex offenders with a prior arrest for child molesting were more likely to be arrested for child molesting than [other sex offenders]").

Thus, even assuming the tier of scrutiny most protective of Llamas's rights, and giving the strictest possible interpretation to the tailoring element thereof, the probation condition imposed by NRS 176A.410(1)(l) is constitutional as applied to him. The condition serves the compelling interest of protecting his minor victim from further contact with the man who pled guilty to sexually abusing him. And, in contrast to the condition at issue in *Wolf Child,* this condition is needed to provide the

victim that protection, else he would face the threat of seeing his alleged abuser any time he wished to visit his biological mother.

## II.

Even accepting arguendo NRS 176A.410(1)(l)'s constitutionality, Llamas presses that the district court abused its discretion in applying the section to him. *But see Igbinovia v. State*, 111 Nev. 699, 707, 895 P.2d 1304, 1309 (1995) ("[A] district court judge enjoys wide discretion under grants of authority to impose such [probation] conditions."). NRS 176A.410(1)(l) mandates that a district court impose the condition in question when a "defendant is convicted of a sexual offense and the court grants probation or suspends the sentence," *see* NRS 176A.410(1) ("the court *shall* . . . order as a condition of probation or suspension of sentence" the various conditions outlined by subsections (a)-(r)), circumstances Llamas does not dispute occurred, unless "the court finds that extraordinary circumstances are present and the court enters those extraordinary circumstances in the record." NRS 176A.410(6). Thus, despite that Llamas makes no mention of NRS 176A.410(6), his argument on this point is essentially that extraordinary circumstances exist such that the district court's imposition of the probation term required by NRS 176A.410(1)(l) was neither required nor justified. On appeal Llamas points to no specific circumstances that are, in his view, "extraordinary," but in the court below he claimed that his having a biological child with whom he resides qualified as such.

In terms of the meaning of "extraordinary circumstances"—the interpretation of which we undertake de novo, *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004)—ordinarily the phrase would suggest events that are "out of course . . . beyond what is usual, regular, or

customary." *Merriam-Webster's Collegiate Dictionary* 444 (11th ed. 2007). And NRS 176A.410(6)'s legislative history likewise supports this—a proponent of the bill that enacted the section explained that "the court . . . [has] discretion in extraordinary circumstances to not impose some of the [probation] conditions. However, *for the most part* the conditions must be imposed." *Hearing on S.B. 325 Before the Senate Judiciary Comm.*, 69th Leg., 1547 (Nev., May 1, 1997) (emphasis added).

The State denies that Llamas's status as a live-in father is at all unusual—"[a sex offender] having his own biological children and wanting access to them would not constitute an extraordinary condition. That's probably the case for many sex offenders." And the district court agreed, stating, "the fact that [Llamas] has biological children, I don't think is an extraordinary condition." Though the State apparently provided no source for its assertion that "many sex offenders have their own kids," neither has Llamas provided any counter (beyond continuing to cite to *Wolf Child* as a case wherein a man convicted of an entirely disparate sexual offense was permitted access to his biological children). And, though there are aspects of Llamas's circumstances that, taken together, might be out of course for sexual offense cases—for example, that Llamas may have been black-out drunk, that Sarah has since withdrawn the accusation and sustains a romantic relationship with him, that he maintained his innocence via an *Alford* plea, and that the alleged victim had no memory of the event—Llamas made no such argument based upon them before the district court, nor does he discuss that possibility on appeal. Thus, we reject his claim that the district court abused its discretion in applying NRS 176A.410(1)(l) to him.

SUPREME COURT
OF
NEVADA

(O) 1947A

We therefore ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc:     Hon. James M. Bixler, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk