**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50602 |
| Plaintiff - Appellee, | D.C. No. 3:13-cr-01988-GPC-1 |
| v. | |
| JAIME BIBO-LOPEZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted March 6, 2015
Pasadena, California
Submission Vacated March 11, 2015
Resubmitted June 25, 2015

Before: REINHARDT, N.R. SMITH, and HURWITZ, Circuit Judges.

Jaime Bibo-Lopez[1] pleaded guilty to one count of distributing visual

depictions of a minor engaged in sexually explicit conduct in violation of 18

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[1]The defendant-appellant is referred to throughout the briefs as Bibo; that name is used here.

U.S.C. § 2252(a)(2). The district court sentenced Bibo to six years in custody and ten years of supervised release. Bibo argues that the district court committed procedural errors in deciding the length of his custody and the terms of two of the conditions of his supervised release. We agree.

A district court commits a procedural error if it bases its sentence on "clearly erroneous facts." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). A factual finding is clearly erroneous if it is "without support in the record." *United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). When the district court relies on a clearly erroneous factual conclusion in deciding a sentence, we vacate and remand for resentencing, even when other factors might have supported the sentence. *United States v. Burgum*, 633 F.3d 810, 816 (9th Cir. 2011).

The district court sentenced Bibo above the mandatory minimum based in part on the "real" risk that he would "graduate from the observation of [child pornography] to actual conduct." Bibo correctly asserts that the district court's finding had no support in the record and thus was clearly erroneous. Bibo introduced evidence that he did not present a risk of "graduating" and the government did not present any evidence that he did. The government now points to studies showing that some child pornography offenders pose a greater risk than members of the public at large to commit contact sex offenses, but it did not cite

these studies before the district court. Without commenting on the relevance or weight of the studies, we hold that they may not be used to support the sentence in this case because they were not part of the record before the district court. Accordingly, we vacate and remand the sentence.

Although we remand the entirety of Bibo's sentence on the basis of the above procedural error, in the interest of avoiding needless additional litigation we briefly address Bibo's other objections to his sentence. Condition 12 of Bibo's supervised release requires him to complete "a sex offender evaluation, which may include periodic . . . physiological testing." Bibo argues that this could include penile plethysmography testing.[2] The government concedes that Condition 12 does not allow for plethysmography testing, and the district court could not have authorized plethysmography testing without making additional factual findings. *United States v. Weber*, 451 F.3d 552, 568-69 (9th Cir. 2006). Assuming the district court imposes a similar restriction to Condition 12 on remand, it should make explicit what was implicit before: the condition does not include penile plethysmography testing.

---

[2]"Penile plethysmograph testing is a procedure that involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." *United States v. Weber*, 451 F.3d 552, 552 (9th Cir. 2006) (internal quotation marks omitted).

Bibo also asserts that the district court erred by imposing Condition 9, which prevents him from possessing any material that "depicts 'sexually active conduct' . . . as defined by 18 U.S.C. § 2256(2)" involving adults. Bibo contends that this condition sweeps in not only adult pornography, but a wide swath of mainstream, non-pornographic films, television shows, literature, and other media. He argues that Condition 9 therefore implicates significant First Amendment interests and should be subject to the articulation requirement outlined in *Weber*. 451 F.3d at 561.

We recently confronted an almost identical condition of supervised release in *United States v. Gnirke*, 775 F.3d 1155, 1158 (9th Cir. 2015). In that case we did not reach the question of whether Condition 9 as written triggered the articulation requirement because we construed language identical to Condition 9 as limited to pornography. *Id.* at 1166. Under this narrower reading, we found that limiting Gnirke's access to adult pornography did not infringe a significant liberty interest. *Id.* at 1160. As in *Gnirke*, the district court here was concerned that viewing adult pornography would lead Bibo back to viewing child pornography. On remand, assuming the district court again imposes a condition of supervised release similar to Condition 9, it should make clear that the condition is limited to the restriction as upheld in *Gnirke*.

4

**Sentence Vacated and Remanded**.

N.R. Smith, Circuit Judge, dissenting:

On appeal, Bibo only challenges the procedural reasonableness of his sentence, alleging that the district court's conclusion that there was "some reason to believe" Bibo might graduate to a contact offense was clearly erroneous.

Under *United States v. Carty*, we review a sentence for procedural reasonableness, including whether the district court chose "a sentence based on clearly erroneous facts." 520 F.3d 984, 993 (9th Cir. 2008). When we review for clear error, we will reverse only if there is no evidence in the record to support the district court's finding, or if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Christensen*, 732 F.3d 1094, 1103 (9th Cir. 2013) (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Elliot*, 322 F.3d 710, 715 (9th Cir. 2003) (citation omitted).

Bibo moved the district court to vary downward from the applicable Guidelines range to the statutory minimum. The district court agreed to vary downward, but not to the extent Bibo requested. The district court justified the sentence it imposed, because "there [was] some reason to believe that individuals who obtain gratification from viewing these photographs and videos are on the path to themselves engaging in the form of conduct that's depicted." The court

1

further noted that, in its experience, "individuals who engage in the monitoring and viewing of these photographs graduate." With regard to the specific risk that Bibo himself would "graduate" to a contact offense, the district court said it was "impossible" to know; the higher sentence was merely a precaution.

In order for Bibo's sentence to be procedurally reasonable, there need only have been "some evidence" in the record from which the district court could conclude that there was a risk that Bibo might commit a contact offense against a child in the future. *See United States v. Gadson*, 763 F.3d 1189, 1220 (9th Cir. 2014). We are not called upon, as the majority mistakenly suggests, to determine whether the degree of risk justified the district court's decision not to vary down to the mandatory minimum. The majority's conclusion that the district court's finding was clearly erroneous is at odds with the record and our precedent. Therefore, I respectfully dissent.

In this appeal, Bibo has to demonstrate either (1) that there was no basis for the district court's conclusions or (2) that his studies unequivocally demonstrated that no such link exists. He failed on both counts, and his sentence should be affirmed. Bibo contends that he provided studies to the district court showing that there was no risk that he would "graduate," based solely on the fact that he viewed and possessed child pornography. However, even a cursory examination of Bibo's

2

materials shows that the opposite is true.

Bibo first cited an article that plainly recognized that, before the internet, between one-fifth and one-third of offenders in possession of child pornography were also abusers. While the emergence of the internet may have diminished these numbers, there was nothing in the materials that Bibo provided to show that the risk has been extinguished. Indeed, the second article cited by Bibo noted only that "[a] history of viewing child porn is not itself a *strong* indicator" of whether an offender will go on to abuse children. Contrary to Bibo's assertions, none of his cited materials supported his assertion that "it is a myth that there is a link between casual viewing of child pornography and abusing children." This statement is merely Bibo's gloss on materials that unambiguously show that a link exists between possession of child pornography and committing contact offenses against children. Because we are reviewing Bibo's sentence solely for procedural reasonableness, this evidence was sufficient to show that the district court's actual conclusion, that there was "some reason to believe" Bibo (as a possessor of child pornography) might commit a contact offense in the future, was not clearly erroneous.

The district court was entitled to draw the same conclusion from this evidence as the court in *United States v. Apodaca*, 641 F.3d 1077 (9th Cir. 2011).

3

In that case (which involved a substantive reasonableness challenge), we reviewed a similar challenge to a lifetime term of supervised release imposed following the defendant's conviction for possession of child pornography. *Id.* at 1080. The district court justified that harsh term (much more significant than Bibo's sentence) as "a way of saying let's be really safe and careful" to ensure the defendant did not commit a contact offense in the future. *Id.* at 1084. In that case, the defendant also argued that the district court failed to recognize that not all possessors of child pornography go on to commit contact offenses.[1] *Id.* at 1082. Ultimately, the *Apodaca* court was forced to conclude that "the scientific literature falls short of" demonstrating "that possession-only Internet child pornographers were highly unlikely to recidivate or commit more serious sex offenses." *Id.* at 1084.

The evidence to support the district court's extremely limited conclusion is

---

[1]I recognize that the defendant in *Apodaca* made this argument on the substantive reasonableness prong. Therefore, *Apodaca* is not controlling. However, the arguments in *Apodaca* are illustrative, in that they show Bibo's claim is more appropriately characterized as a challenge to the substantive reasonableness of his sentence. Bibo's real contention is that the district court should have varied down to the statutory minimum, because the risk of going on to commit a contact offense was low. Bibo has used the logic of a substantive reasonableness challenge to accomplish a remand on a procedural challenge. Although this approach seems to be a successful one on appeal, it will not likely get Bibo the relief he seeks in the district court. All the majority has succeeded in accomplishing is to ensure we will now hear procedural challenges on a substantive reasonableness issue in cases like this one in the future.

4

in the record, and even a cursory examination of our case law demonstrates that the conclusions the district court drew from that evidence were entirely permissible. Under clear error review, the only issue before us is whether there was some evidence to show that a link exists, regardless of how significant, between possession of child pornography and a future contact offense. The evidence before the district court, provided by Bibo himself, was unquestionably sufficient to support the district court's limited concern. Given our holding in *Apodaca*, I am not left with a definite and firm conviction that a mistake was made. Indeed *Apodaca* also demonstrates the futility of a remand in this case when the exact same sentence will be imposed on remand with the exact same reasoning.