Filed 2/25/14  P. v. Hicks CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038821 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1108143) |
| v. | |
| ROBERT DANIEL HICKS, | |
| Defendant and Appellant. | |

In this appeal, appellant Robert Hicks challenges as overbroad several conditions of his probation and argues that some of these conditions are vague. We shall outline the conditions at issue later. For reasons that follow we agree with appellant that some of the conditions are overbroad and/or vague.

*Facts and Proceedings Below*[1]

"The defendant was arrested on May 4, 2012, based on prior information during the investigation, however, he was formally charged after a Forensic warrant search of his computer produced emails that contained child pornography."

The Santa Clara County District Attorney charged appellant by felony complaint with one count of possessing, publishing, or producing sexual matter depicting a person

---

[1] There was no preliminary hearing in this case and appellant waived referral to the probation department. Accordingly, the only facts that this court has are contained in the probation officer's brief description of the underlying event as set forth *ante*.

under age 18 engaging in or simulating sexual conduct (Pen. Code, 311.1, subd. (a), count one); and one count of possessing or controlling matter depicting a person under age 18 engaging in or simulating sexual conduct (Pen. Code, § 311.11, subd. (a), count two).

Pursuant to a plea agreement, appellant pleaded no contest to count two and count one was submitted for dismissal at the time of sentencing. As part of the plea agreement, appellant was promised three years formal probation with an eight month county jail term.

When the court sentenced appellant on August 31, 2012, among other things, the court imposed several conditions of probation that are the subject of this appeal. Specifically, the court ordered "as a condition of release from formal probation [appellant] shall enter, participate in and complete an approved sex offender management program following the standards developed pursuant to section 9003 of the Penal Code for a period of not less than one year up to the entire term of probation as determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court. [¶] [Appellant] shall waive any privilege against self-incrimination and participate in polygraph examinations which shall be part of the sex offender management program pursuant to section 1203.067(b)(3) of the Penal Code. . . . [¶] [Appellant] shall waive any psychotherapist-patient privilege to enable communication between the offender management professional and the probation officer . . . .[2]"

_____

[2]     An amendment to Penal Code section 1203.067, operative July 1, 2012, provides: "(b) On or after July 1, 2012, the terms of probation for persons placed on formal probation for an offense that requires registration pursuant to Section 290 to 290.023, inclusive, shall include all of the following: . . . [¶] (2) Persons placed on formal probation on or after July 1, 2012, shall successfully complete a sex offender management program, following the standards developed pursuant to Section 9003, as a condition of release from probation. The length of the period in the program shall be not less than one year, up to the entire period of probation, as determined by the certified sex

In addition, the court ordered that appellant "not date, socialize or form a romantic relationship with any person that has physical custody of a minor unless approved by the probation officer"; "not purchase or possess any pornographic or sexually explicit material as defined by the probation officer"; and "not possess or use any data encryption technique program."

Before the court imposed the aforementioned conditions, defense counsel objected to the condition requiring appellant to waive his privilege against self-incrimination and participate in polygraph examinations; and the condition requiring appellant to waive the psychotherapist-patient privilege so the sex offender management professional could communicate with the probation officer. Defense counsel argued that the conditions were not required at the time of the commission of appellant's crime nor at the time when appellant entered his plea. After a discussion at the bench, defense counsel noted that the conditions were not contemplated by the parties at the time of the plea. Counsel asked the court not to impose the conditions. The court responded that it intended to impose the conditions pursuant to recent amendments to Penal Code section 1203.067. The court found that the conditions were reasonably related to appellant's rehabilitation and that appellant should have contemplated they would be imposed, although not at the time of appellant's plea. The court afforded appellant the opportunity to bring a motion to withdraw his plea. However, appellant chose to accept the terms of probation.

---

offender management professional in consultation with the probation officer and as approved by the court. [¶] (3) Waiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program. [¶] (4) Waiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09." (§ 1203.067, amended by Stats. 2010, ch. 219 (A.B. 1844), § 17, eff. Sept. 9, 2010; § 1203.067, subd. (b); *People v. Douglas M.* (2013) 220 Cal.App.4th 1068, 1075 [the effective date of the amended statute was September 9, 2010, but its provisions did not become operative until July 1, 2012].)

Appellant filed a timely notice of appeal on September 25, 2012, based on the sentence imposed.

On appeal, appellant contends that the probation conditions requiring him to undergo polygraph testing, waive the psychotherapist-patient privilege, refrain from socializing with a person who has physical custody of a minor, and not purchase or possess any pornographic or sexually explicit material or data encryption technique program are constitutionally overbroad.

*Discussion*

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citations.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120–1121.) Nevertheless, probation conditions may be challenged on the grounds of unconstitutional vagueness and overbreadth. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630.)

A claim that a probation condition is unconstitutionally vague or overbroad may be reviewed on appeal without an objection in the trial court if it is capable of correction without reference to the particular sentencing record in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 878-879, 888-889 (*Sheena K.*).)

"A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "[W]here an otherwise valid condition of probation impinges on constitutional rights; such conditions must be carefully tailored, ' "reasonably related to the compelling state interest in reformation and rehabilitation . . . ." ' [Citations.]" (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942.)

"Under the overbreadth doctrine, ' "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." '

4

[Citations.] 'A law's overbreadth represents the failure of draftsmen to focus narrowly on tangible harms sought to be avoided, with the result that in some applications the law burdens activity which does not raise a sufficiently high probability of harm to governmental interests to justify the interference.' [Citation.]" (*In re Englebrecht* (1998) 67 Cal.App.4th 486, 497 [discussing challenges to a preliminary injunction].)

In examining whether a probation condition is void for vagueness, courts have considered whether the condition is " 'sufficiently precise for the probationer to know what is required of him [or her] . . . .' " (*Sheena K., supra,* 40 Cal.4th 875, 890, quoting *People v. Reinertson* (1986) 178 Cal.App.3d 320, 324–325.) "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*Sheena K.,* at p. 890.)

With these principles in mind we examine each of the conditions challenged here.

*Polygraph Testing*

Appellant challenges the polygraph testing condition on two grounds. That is that the condition is overbroad and it violates his privilege against self-incrimination.

*i. Overbreadth*

Appellant asserts that the polygraph testing provision "as stated is overbroad and must be modified such that [he] should have to answer only questions reasonably related to the completion of his probation or his criminal conviction." In part, respondent agrees that the scope of the condition should be modified to closely tailor the condition to the court's intent in imposing it and the Legislature's intent in amending Penal Code section 1203.067. However, respondent argues that appellant's specific modification is too narrow to fully implement the sex offender management program.

In *People v. Brown* (2002) 101 Cal.App.4th 313 (*Brown*), the defendant pleaded guilty to stalking his former girlfriend while a domestic violence temporary restraining order was in effect. (*Id.* at p. 317.) The defendant was placed on probation, and one of his conditions required him to successfully complete a stalking treatment program. (*Ibid.*) In pleading guilty, the defendant stipulated to the facts contained in the police

report and preliminary hearing transcript but denied he had engaged in the behavior. In addition, he told the psychologist in charge of the treatment program that he did not belong in the program because he was not a stalker. (*Id.* at p. 318.) The psychologist recommended that the defendant's probation include a polygraph testing condition for purposes of treatment, noting the defendant had attempted to falsify a drug test, denied the major facts of the case, had a psychopathic personality, and there were several " 'stalking recidivism predictors' " present in the case. (*Ibid.*) Accordingly, the trial court imposed the condition that the defendant " 'undergo periodic polygraph examinations at [his] expense, at the direction of the probation officer,' " to further the defendant's successful completion of the stalking therapy program. (*Id.* at p. 321.) The trial court declined to place any restrictions on the questions that could be asked during the testing. (*Ibid.*) The Court of Appeal found the polygraph testing to be a valid condition since it was reasonably related to the defendant's crime and to possible future criminality. (*Ibid.*) However, the court found the condition to be "broadly worded." (*Ibid.*) The *Brown* court held that the condition "must limit the questions allowed to those relating to the successful completion of the stalking therapy program and the crime of which [the defendant] was convicted." (*Ibid.*)

Here, the gist of the polygraph condition is similar to the one in *Brown,* except that appellant has been ordered to complete a sex offender management program rather than a stalking therapy program. Similar to the condition in *Brown,* the polygraph condition does not limit the types of questions that can be asked during the examination and thus is overbroad. We will rewrite the condition to limit the questions allowed to those relating to the successful completion of the court-mandated sex offender management program and the crime of which appellant was convicted.

*ii. As Requiring Appellant to Waive any Privilege Against Self-Incrimination*

A condition that requires a probationer to submit to polygraph testing as part of a sex offender management program does not in and of itself violate the privilege against

6

self-incrimination.  (*Brown, supra,* at p. 321.)  Such a condition helps monitor appellant's compliance with probation and is therefore reasonably related to appellant's crime of possessing child pornography.  (*Id.* at pp. 319–321; *People v. Miller* (1989) 208 Cal.App.3d 1311, 1314.)  If the questions put to the probationer are relevant to his probationary status and pose no realistic threat of incrimination in a separate criminal proceeding, the Fifth Amendment privilege would not be available and the probationer would be required to answer those questions truthfully.  (*Minnesota v. Murphy* (1984) 465 U.S. 420, 435, fn. 7.)

As the *Brown* court explained:  "[U]nless [appellant] specially invokes the privilege, shows he faces a realistic threat of self-incrimination and nevertheless is made to answer the question or questions, no violation of his privilege against self-incrimination is suffered.  [Citations.]"  (*Brown, supra,* 101 Cal.App.4th at p. 320.)

It is axiomatic that if the state puts questions to a probationer that call for answers that would incriminate him in a pending or later criminal proceeding, and expressly or by implication asserts that invocation of the privilege would lead to revocation of probation, the answers would be deemed compelled under the Fifth Amendment and thus involuntary and inadmissible in a criminal prosecution.  (*Minnesota v. Murphy, supra,* 465 U.S. at p. 435; *New Jersey v. Portash* (1979) 440 U.S. 450, 458-459.)

The polygraph testing condition is modified to read "Defendant shall waive any privilege against self-incrimination and participate in polygraph examinations; the questions shall be limited to those relating to the successful completion of the sex offender management program."

*Waiver of the Psychotherapist-Patient Privilege*

The trial court ordered appellant to "waive any psychotherapist-patient privilege to enable communication between the [sex] offender management professional and the probation officer, pursuant to Section 1203.067(b)(4) and Section 290.09 of the Penal Code."  Appellant contends that this condition is constitutionally overbroad and violates

7

his right to privacy. Appellant requests that this court strike the condition or in the alternative modify it to limit disclosure to the probation officer and the court.

"The psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy. [Citations.] It is also well established, however, that the right to privacy is not absolute, but may yield in the furtherance of compelling state interests. [Citations.]" (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511.)

In *In re Lifschutz* (1970) 2 Cal.3d 415, the California Supreme Court observed, "Even though a patient's interest in the confidentiality of the psychotherapist-patient relationship rests, in part, on constitutional underpinnings, all state 'interference' with such confidentiality is not prohibited." (*Id.* at p. 432.) Similarly, in *Jones v. Superior Court* (1981) 119 Cal.App.3d 534, the court concluded that "The constitutional right [to privacy] is by no means absolute. The state's interest in facilitating the ascertainment of truth in connection with legal proceedings is substantial enough to compel disclosure of a great variety of confidential material, including even communications between a psychotherapist and his patient." (*Id.* at p. 550.)

Furthermore, the California Supreme Court has observed that "probation is a privilege and not a right, and that adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights . . . ." (*People v. Olguin* (2008) 45 Cal.4th 375, 384.)

As noted, "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

To determine whether the psychotherapist-patient privilege embraced by the right to privacy has impermissibly been violated, we begin by considering the state's competing interest.

8

In the Sex Offender Punishment Control and Containment Act of 2006 (Pen. Code, § 290.03), the "Legislature [found] and declare[d] that a comprehensive system of risk assessment, supervision, monitoring and containment for registered sex offenders residing in California communities is necessary to enhance public safety and reduce the risk of recidivism posed by [sex] offenders." (Pen. Code, § 290.03, subd. (a).)

Accordingly, the Legislature amended Penal Code section 1203.067 to provide a collaborative approach to sex offender management known as the "Containment Model." As the analysis of Assembly Bill 1844 explains, "The Containment Model calls for a collaborative effort of sex offender specific treatment providers, law enforcement supervising agents such as probation officers or parole agents, polygraphists providing specialized testing as both a treatment and monitoring tool and victim advocacy participants whenever possible. The offender is supervised and overseen within this context." (Sen. Com. on Public Safety, Bill Analysis of Assem. Bill No. 1844 (2009-2010 Reg. Sess.) June 29, 2010, available on line at <http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_1801-1850/ab_1844_cfa_20100628_141315_sen_comm.html>)

As of July 1, 2012, the Containment Model is mandatory. (Pen. Code, §§ 290.09, 1203.067, 3008 & 9003.)

The Legislature has explained that the purpose of the waiver of the psychotherapist-patient privilege is to "enable communication between the sex offender management professional and supervising probation officer." (Pen. Code, § 1203.067, subd. (b)(4).) Such a waiver supports the compelling state interest in "enhanc[ing] public safety and reduc[ing] the risk of recidivism posed by [sex] offenders." (Pen. Code, § 290.03, subd. (a).)

Implicitly, appellant concedes that a limited waiver of the psychotherapist-patient privilege is warranted in his case, but argues that it should be modified "to reasonably limit disclosure" of psychotherapist-patient communications "to the probation officer and the court." Respectfully, we disagree with appellant; we believe that appellant's

9

modification renders the condition excessively narrow and could hamper the collaborative efforts to ensure that appellant successfully completes his probation. Since the Containment Model calls for a collaborative effort of sex offender specific treatment providers, which includes polygraphists providing specialized testing as both a treatment and monitoring tool, limiting disclosures to the probation officer and the court would effectively eliminate such a treatment and monitoring tool. As respondent suggests, the substance of the psychotherapist-patient communications may require verification or investigation by the polygraphists.

Simply put, for Containment Model of sex offender management to be effective, there must be open and ongoing communication between *all* professionals responsible for supervising, assessing, evaluating, treating, supporting, and monitoring sex offenders. The absence of open and ongoing communication between these professionals and other involved persons could effectively compromise the purpose of the containment team approach and as a result jeopardize the safety of the community. Accordingly, we deny appellant's request that this court modify the probation condition requiring him to waive the psychotherapist-patient privilege to limit disclosure to the probation officer and the court.

*Socializing or Forming a Romantic Relationship*

As another condition of probation, the court ordered that appellant "may not date, socialize or form a romantic relationship with any person that has physical custody of a minor unless approved by the probation officer." Appellant argues that the term socialize is not "clearly defined" and as such is "unconstitutionally vague as it does not state with certainty exactly what behavior is prohibited."

Appellant goes on to argue that the condition is overbroad because it "imposes significant restrictions on his right to free association, his right to pursue a romantic relationship and create a family." We agree that this particular condition imposes significant restrictions on appellant's constitutional right to free association.

10

In *People v. O'Neil* (2008) 165 Cal.App.4th 1351 (*O'Neil* ), the trial court imposed the following condition of the defendant's probation: " 'You shall not associate socially [i.e. socialize], nor be present at any time, at any place, public or private, with any person, as designated by your probation officer.' " (*Id.* at p. 1354.) The reviewing court observed that, "[a]s written, there are no limits on those persons whom the probation officer may prohibit defendant from associating with." (*Id.* at p. 1357.) The *O'Neil* court noted that the condition failed to "identify the class of persons with whom defendant may not associate" or "provide any guideline as to those with whom the probation department may forbid association." (*Id.* at pp. 1357–1358.) The *O'Neil* court explained that while a trial court "may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation," "the court's order cannot be entirely open-ended." (*Id.* at pp. 1358–1359.) It concluded that "[w]ithout a meaningful standard, the order is too broad and it is not saved by permitting the probation department to provide the necessary specificity." (*Id.* at p. 1358, fn. omitted.)

The condition in *O'Neil* was found to be overbroad because it was "unlimited and would allow the probation officer to banish [O'Neil] by forbidding contact with his family and close friends, even though such a prohibition may have no relationship to the state's interest in reforming and rehabilitating [him.]" (*Id.* at p. 1358.)

Respondent argues that the disputed condition restricts appellant's access to children and is thus primarily designed and reasonably related to preventing him from committing further offenses against children. While the disputed condition does not delegate unfettered discretion to the probation officer as in *O'Neil*, we are concerned about the breadth of the condition.

It is undisputed that the probation condition at issue here involves noncriminal conduct and the category of people with whom appellant is prohibited from establishing

11

social relationships is enormous. (*U.S. v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082, 1101 (*Wolf Child*).)

Here, in essence, the question is whether the condition prohibiting appellant from associating with *anyone* who has children under the age of 18, unless approved by his probation officer, is *carefully tailored, reasonably related* to appellant's reformation and rehabilitation.

In *Wolf Child*, *supra*, 699 F.3d 1082, one of the conditions of the defendant's supervised release was that the defendant shall not " 'date or socialize with anybody who has children under the age of 18' without prior written approval from his probation officer." (*Id*. at pp. 1100-1101.) In determining that the condition suffered from constitutional overbreadth because it infringed on Wolf Child's right to free association (*id*. at p. 1100), the Ninth Circuit Court of Appeals noted, "[t]he prohibited group includes people close to Wolf Child, such as family members, friends, and neighbors who might have children. It would also include a boss or coworker, a sponsor in a support group, or a spiritual leader. The number of people with whom Wolf Child might socialize, knowing them to have children under the age of 18, is indeed vast. For the 10 years of his supervised release, Wolf Child would be required to obtain prior written approval from his probation officer before, for instance, having dinner with N.N.[3] on a special occasion, or meeting a close family member or friend for coffee, or going to an AA meeting or a tribal function with others seeking to improve their own lives or their tribe's social conditions generally; he might even find himself prohibited from joining his coworkers in the lunch-room or at a social activity sponsored by his employer." (*Id*. at p. 1101.) The *Wolf Child* court went on to say, "It is hard to imagine how Wolf Child would be able to develop friendships, maintain meaningful relationships with others, remain employed, or in any way lead a normal life during the 10 years of his supervised

---

[3] N.N. is a former girlfriend and mother of Wolf Child's oldest child. (*Wolf Child, supra,* at p. 1089, fn. 1.)

release were he to abide" by the condition that he not date or socialize with anybody who has children under the age of 18. (*Ibid.*) The *Wolf Child* court found the condition "overbroad and thus not sufficiently limited to achieving the goals of deterrence, protection of the public or rehabilitation." (*Id.* at p. 1100.)

Respondent argues that "[a]n offender who has shown a deviant interest in children by viewing child pornography may reoffend with a hands on offense, so caution in contact with children is indicated. It is possible that such offenders present a greater risk of committing a new, contact sex offense, especially if they have also committed other types of criminal offenses."[4]

---

[4]   "Current empirical literature casts serious doubt on the existence of a substantial relationship between the consumption of child pornography and the likelihood of a contact sexual offense against a child. For example, one recent study that followed 231 child pornography offenders for six years after their initial offenses found that only nine persons, or 3.9 percent of the sample, committed even a non-contact sexual offense; only two persons, or 0.8 percent of the sample, committed a contact offense. Jérôme Endrass et al., *The Consumption of Internet Child Pornography and Violent Sex Offending,* 9 BMC Psychiatry 43 (2009), *available at* http:// www. ncbi. nlm. nih. gov/ pmc/ articles/ PMC 2716325/ pdf/ 1471– 244 X– 9– 43. pdf. Endrass et al. concluded that 'the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses . . . at least not in those subjects without prior convictions for hands-on sex offenses.' *Id. See also* Michael C. Seto & Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders,* 17 Sexual Abuse 201, 208 (2005) ('[O]ur finding does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children.'). [¶] Other studies reinforce the conclusion that individuals who have only possessed and/or viewed child pornography present substantially lower risks of harm than do individuals who have committed contact sex offenses. *See, e.g.,* L. Webb, J. Craissati & S. Keen, *Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters,* 19 Sexual Abuse 449, 463 (2007) (finding Internet-only offenders 'significantly less likely to fail in the community than child molesters,' and concluding that 'by far the largest subgroup of internet offenders would appear to pose a very low risk of sexual recidivism'), *available at* http:// sax. sagepub. com/ content/ 19/ 4/ 449. full. pdf+ html; Seto & Eke, *supra,* at 207 & tbl.3 (finding that only 1.3 percent of Internet-only offenders in the sample recidivated with contact sex offenses, in contrast to 9.2 percent of persons with prior Internet and contact sex offenses)." (*U.S. v. Apodaca* (9th Cir. 2011) 641 F.3d 1077, 1086 (conc. opn. Fletcher, J.)

We recognize that decisions of the federal district courts are not binding on this court.  (*People v. Seaton* (2002) 26 Cal.4th 598, 653.)  However, we may still rely on them as persuasive authority.  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1292.)

We are not persuaded that that the condition at issue here is narrowly tailored, *reasonably related* to the compelling state interest in appellant's reformation and rehabilitation inasmuch as this broad condition entails a greater deprivation of appellant's right to free association than is necessary to achieve the goal of reformation and rehabilitation.  The causal link between appellant's crime and risk of future crimes is contingent and indirect at best.  The perceived harm does not necessarily follow, but

---

In *U.S. v. Apodaca*, *supra*, 641 F.3d 1077, the government had pointed to a single study that it argued demonstrated a causal link between viewing child pornography and sexually assaulting children—"Michael L. Bourke & Andres E. Hernandez, *The 'Butner Study' Redux: A Report on the Incidence of Hands–On Child Victimization by Child Pornography Offenders,* 24 J. Family Violence 183 (2009)."  (*Id*. at p. 1087, conc. opn. Fletcher, J.)  However, as Justice Fletcher pointed out in *U.S. v. Apodaca, supra,* 641 F.3d 1077, "one of the study's authors has disavowed the government's citation of his work to support this claim, and has cautioned that 'the argument that the majority of [child pornography] offenders are indeed contact sexual offenders and, therefore, dangerous predators . . . simply is not supported by the scientific evidence.'  Andres E. Hernandez, *Psychological and Behavioral Characteristics of Child Pornography Offenders in Treatment,* at 4 (Apr.2009) (unpublished manuscript) (emphasis deleted), *available at* http:// www. iprc. unc. edu/ G 8/ Hernandez_ position_ paper_ Global_ Symposium. pdf.  The author has explained that, because the study subjects were volunteer participants in a prison sex offender treatment program, the observed correlation between Internet child pornography consumption and contact sex offenses cannot be generalized.  [Citation.]  Moreover, the underlying Butner study reported that '[t]he vast majority of our subjects indicated they committed acts of hands-on abuse *prior* to seeking child pornography via the Internet.'  [Citation.]  *See also* Melissa Hamilton, *The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?,* 22 Stan. L. & Pol'y Rev. (manuscript at 42–48) (forthcoming 2011) (pointing out further problems with the Butner study, including sample bias and the possibility that study subjects over-reported their history of sexual offenses in order to curry favor with clinicians and avoid expulsion from the treatment program), *available at* http:// papers. ssrn. com/ sol 3/ papers. cfm? abstract_ id= 1689507."  (*U.S. v. Apodaca*, *supra*, at p. 1087, conc. opn. Fletcher, J.)

14

depends upon some un-quantified and as yet unquantifiable potential for subsequent criminal acts.

Respondent argues that this court should not "imitate the Ninth Circuit's cavalier dismissal of measures designed to protect children from sex offenders." We are disturbed by respondent's characterization of the Ninth Circuit's decision in *Wolf Child* as "cavalier." The *Wolf Child* court recognized that the condition at issue there, which is identical to the condition at issue here, suffered from very real constitutional problems.

We recognize that the condition is designed to prevent appellant having contact with children. However, the condition prohibits appellant from dating or socializing with people such as family, friends and coworkers, even though he may never come into contact with their children. A restriction on socializing or dating *anybody* who has a child or children under the age of 18, even though appellant may never come into contact with those children, is not carefully tailored to the purpose of the condition. Simply put, it burdens activity that does not raise a sufficiently high probability of harm to governmental interests to justify the interference.

Accordingly, we will strike the condition that appellant not "may not date, socialize or form a romantic relationship with any person that has physical custody of a minor unless approved by the probation officer."

*Possession of Pornography or Sexually Explicit Material*

The court imposed a probation condition that requires appellant to "not purchase or posses any pornographic or sexually explicit material as defined by the probation officer." Appellant contends that this condition is vague because he could violate it unknowingly by holding another person's backpack or briefcase unaware that they contained these items or by inviting a guest into his home who unbeknownst to him brought such items into the home and left them there.

Respondent concedes, based on this court's decision in *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*) that the condition should be modified.

15

In *Pirali*, the defendant challenged as vague a probation condition that prohibited him "from purchasing or possessing pornographic or sexually explicit materials as defined by the probation officer." (*Pirali*, *supra*, 217 Cal.App.4th at p. 1352.) This court held that because "the probation officer [could] deem material sexually explicit or pornographic *after* defendant already possesse[d] the material" the "defendant could violate his probation without adequate notice." (*Ibid*.) Accordingly, we modified the condition to read " 'You're ordered not to purchase or possess any pornographic or sexually explicit material, having been informed by the probation officer that such items are pornographic or sexually explicit.' " (*Id*. at p. 1353.) The condition imposed in this case is in effect identical to the condition imposed in *Pirali*. Accordingly, we will modify the condition to state "The defendant shall not purchase or possess any pornographic or sexually explicit material, having been informed by the probation officer that such items are pornographic or sexually explicit."

*Possession of Data Encryption Technique Programs*

The court imposed a probation condition forbidding appellant from "possess[ing] or us[ing] any data encryption technique program." Again, appellant argues that he could violate this condition unwittingly. Respondent concedes that the condition could, but need not, be modified to incorporate an express knowledge requirement.

Respondent suggests we adopt the Third Appellate District's approach in *People v. Patel* (2011) 196 Cal.App.4th 956 (*Patel*). In *Patel,* the Third District considered a probation condition forbidding defendant from drinking or possessing alcohol, or being in a place where alcohol is the chief item of sale, was invalid because the condition lacked an express knowledge requirement. (*Id.* at p. 959.) The court expressed its frustration with the "dismaying regularity" to which it must revisit the issue of a lack of an express scienter requirement in orders of probation. (*Id.* at p. 960.) The court noted that since there exists a substantial uncontradicted body of case law that establishes that a "probationer cannot be punished for presence, possession, association, or other actions

16

absent proof of scienter," it would no longer entertain the issue on appeal. (*Ibid.*) Thereafter, the Third Appellate District stated that going forward it would construe every such probation condition proscribing restrictions on presence, possession, association, or other actions with the requirement that the action be undertaken knowingly. (*Id.* at p. 961.)

Nonetheless, a number of the courts of appeal have declined to follow the rationale of *Patel,* including the Fourth Appellate District in *People v. Moses* (2011) 199 Cal.App.4th 374, 381, the Second Appellate District in *People v. Moore* (2012) 211 Cal.App.4th 1179, 1188, and this court in *Pirali*, *supra*, 217 Cal.App.4th at pages 1351-1352. In all these cases the courts chose to modify the probation conditions to include a knowledge requirement. Again, we decline to follow the Third Appellate District's approach in *Patel.* Our Supreme Court faced the issue of the lack of a knowledge requirement in a probation condition and concluded that "modification to impose an explicit knowledge requirement is necessary to render the condition constitutional." (*Sheena K., supra,* 40 Cal.4th at p. 892.) Until our Supreme Court rules differently, we will follow its lead on this point. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Accordingly, we will modify the condition that prohibits appellant from possessing or using any data encryption technique program to read, "The defendant shall not knowingly possess or use any data encryption technique program."

*Disposition*

The probation condition requiring appellant to submit to polygraph testing and waive his right to self-incrimination is modified to read, "The defendant shall waive any privilege against self-incrimination and participate in polygraph examinations; the questions shall be limited to those relating to the successful completion of the sex offender management program."

We strike the probation condition prohibiting appellant from dating, socializing or forming a romantic relationship with any person that has physical custody of a minor unless approved by the probation officer.

The probation condition requiring that appellant not purchase or possess any pornographic or sexually explicit material is modified to read, "The defendant shall not purchase or possess any pornographic or sexually explicit material, having been informed by the probation officer that such items are pornographic or sexually explicit."

The probation condition requiring that appellant not possess or use any data encryption programs is modified to read, "The defendant shall not knowingly possess or use any data encryption technique program."

As so modified the judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

18